We'll move to our next case today, Farris v. Vector Construction. Ms. Reichman. Good morning, your honors. May it please the court, counsel. The district court erred in dismissing Mr. Farris's claim for wrongful termination in violation of the Americans with Disabilities Act. As alleged in his complaint, Mr. Farris discovered his termination for the first time on October 25, 2018. And he filed with the EEOC within 300 days. Applying the well-established discovery rule, his charge was therefore timely. Mr. Farris's claim for wrongful termination was sufficient on its face. Mr. Farris was pro se in the district court. He used the Central District of Illinois form complaint and checked the appropriate boxes for wrongful termination in violation of the ADA. And he alleged that, quote, 10-25-2018, I learned I had been terminated, end quote. So let me ask you this question, Ms. Reichman. We all can see that there was the date, the date when he's told, you know, don't come to work, August 5, which you're characterizing as the layoff date. So he knows he's been injured by the company as of that date. Then he finds out in October that he's actually been injured for the very, on the very same date, the very same events, more grievously than he thought he had been injured. He thought it was just a layoff. Now he finds out it's a termination. Why doesn't the rule that the statute of limitations runs from the date you know you were injured, even if you later find out that there are additional injuries? Why isn't that the rule that applies here? Yes, this is a claim for wrongful termination. And when he was laid off, it was a completely separate injury from his termination. When he was laid off, it wasn't any kind of termination of his employment relationship. In the construction industry, and in Mr. Ferris's experience working for Vector Construction for 22 years, he had been laid off each of those 22 years temporarily, as work became available. Based on that, he had no notice of the fact that he was terminated when he was temporarily laid off from this job. When he was temporarily laid off, he was simply laid off from the current job that they were working on, sent home, but he had information that he'd be called back as soon as December for a new job. So he had no notice of his termination. But you are still deriving from this act of sending him home from work until further notice. I'm trying not to use terms that are terms of art. That is maybe not even an injury, a layoff, and he only finds out he's injured. Now we have to sort of correspond this to his charge, too, with the EEOC. Your opponents say that the charge didn't focus on the termination. Yes. To clarify, Mr. Ferris did not say that he wasn't injured when he was laid off, but the claim that we're preserving is for the wrongful termination. And when he was laid off, he simply had no notice of the wrongful termination. And this court ruled in Traper v. Martin that the date of the unlawful employment practice is when a final, ultimate, and non-tentative decision is made for which the employee receives unequivocal notice. So although he may have suffered some injury when he was temporarily laid off, he had no notice of the injury for the claim that we're preserving right now. So you're having to argue that it's just completely different. Oh, excuse me. Go ahead, Judge Roper. Oh, okay. Thank you. You know, whether he can sit... All right. He was sent home. And he was precluded from working anymore. Now, whether he considered that a discharge or a layoff, he was aware of the discriminatory act at that time. And a claim accrues when one suspects discrimination, not when all of the surrounding information is known. Am I not correct? You're correct. So if he had sued for a claim for wrongful layoff, it would have accrued when he was sent home from that job. But when he was sent home from that job, he had no notice that his employment relationship was permanently terminated. He only received notice for the permanent termination in October. And he had no reason to that layoff that he would be terminated. So he did not receive any kind of notice of his termination until later in October. Your argument completely recharacterizes the claim that was asserted in the EEOC charge. So can I clarify? The EEOC charge asked for the last date of discrimination. He wrote August 5th. This was based on the fact that in October, when he emailed the overseer of his 401k account, trying to take a loan from that 401k account, assuming his employment had not been terminated, on October 25th, the loan administrator told him, the account administrator told him that he had been terminated a couple months earlier. That vector had just told the account administrator that he had been terminated a couple months earlier. Based on this, his best guess of when he had been terminated, because he was never given a clear termination notice, he was never told a clear date of when he was terminated. Based on this, he guessed that his termination had occurred in August, based on the fact that in October, he was told he had been terminated a couple months earlier. He put August 5th on the EEOC charge, but the EEOC charge didn't ask for when he discovered his termination. It only asked for when the termination occurred. A cause of action only accrues when the employer discovers or should have discovered the injury. So his EEOC charge form is actually completely consistent with his complaint, where he said that he discovered his termination in October. But he complained about a job action, an adverse employment action that occurred on August 5th. And that's what the EEOC charge was about. And it has somehow morphed into a different sort of a claim on appeal. And I'm struggling with that disconnect, because the case is limited by the EEOC charge. And the EEOC charge focuses on an adverse employment action that occurred on August 5th. The 300 days starts running then. He clearly knew he had suffered an adverse employment action. He clearly knew that it was discriminatory. Clock starts running. And if he wanted to litigate something else, then that's a different EEOC charge. In the EEOC charge, he checked the box for the defendant intentionally discriminated against plaintiff by terminating the plaintiff's employment. In the description section, he wrote that he was discharged on or about August 5th, 2018. So he made clear, although he may have spoken about what could plausibly have been claimed in a number of different claims, he definitely included the claim for wrongful termination in his EEOC charge. Right. So the clock started running on that day. He knew as of that day that he had suffered an adverse employment action. This is in retrospect. The precise character of it perhaps became clear later, but he knew he had been discriminated against by either a layoff or a termination on that date. And that's the charge he filed with the EEOC, and that's what we're limited to. The clock started running on that date. Applying the discovery rule to the October 25th date. Applying the discovery rule to the August 5th date. He knew he was injured then. He knew he was injured. And the fact that the injury, the scope of the injury, or the character of the injury may have become clearer a couple of months later doesn't affect when the clock starts. No, there were two separate claims. The clock started for the layoff. That's what I'm struggling with. The two separate claims here is not what was within the scope of the EEOC charge. You're saying that there was a layoff on August 5th and then there was a termination at some later point that actually started the clock. Yes, exactly. There were two separate adverse actions. There was a layoff and there was a termination. Then you have a problem of being outside the EEOC charge, which defines the scope of the litigation. He checked the box for a termination in his EEOC charge, and he wrote that he was discharged in his EEOC charge. He didn't include the information in the actual EEOC charge about the later discovery, but he spoke about the later discovery to the EEOC investigator. And based on that, the EEOC concluded that it was timely. Based on the investigation into the claim and realizing that there actually were two separate claims. If there are no further questions, I would ask this court to vacate the lower court's judgment and remand for further proceedings. Thank you. Mr. Tews. Good morning, Your Honors. Counsel, may it please the court. I'm Matt Tews representing Appellee Vector Construction. Mr. Ferris's claim is untimely, and the district court properly dismissed his claim with prejudice for at least three core reasons. As Your Honors have already alluded to, the first reason we know that Mr. Ferris's claim is untimely is that's what he says in all of his documentation. But your position does require us to ignore the distinction between the actual date when something happens, on the one hand, and the time when a person learns that it has happened, on the other hand. Those could be two different dates. And he didn't learn that he was terminated until October, even though the event happened in August. He was just told go home, and he doesn't know whether go home means you've lost your job for all eternity, or whether go home means we don't need you this month. Two really different things. Yeah. When Mr. Ferris was told to go home in August, in the middle of construction season, during the middle of a job, he knew, or he certainly should have known, that discriminatory action had been taken against him that ended his employment. Well, let's just stop your sentence right before that ended this employment. I think you may be right. He certainly knows that some adverse action has happened to him. He relates it to discrimination on the basis of disability. I don't think you can go so far as to say a temporary layoff is exactly the same thing as the end of all employment. But then one does need to take into account the principle that Chief Judge Sykes was talking about and that I asked about, that if there's an adverse event, and this happens all the time in tort law. The doctor treats you badly, and you think you just have a badly knit, broken leg, but it turns out instead of a badly knit, broken leg, there's an infection in there, and you wind up losing your leg. So you thought it was for one problem. It turns out to be for a much bigger problem. But the limitations period runs from the time you discovered that there was a problem at all, and you may later discover that there's much greater magnitude to the problem. And if this case falls into any category that favors you, I think that's the case here. He knows something bad happened to him on August the 5th. He attributes it to disability discrimination. He only finds out in October that actually it's the whole loss of his job where he's worked for 20 years. But if that's really all part and parcel of the first thing, then that might be an important factor. I believe that's correct, Your Honor, and I think an important distinction here is that this is an at-will employment case. In an at-will employment case, a layoff and a discharge are the same thing because there is no right to a recall. There's no right to be rehired. There's no obligation on an employer to hire the employee back after some time. I'm not sure I'm persuaded, though, with the course of dealing that that's necessarily true. Now, if he had written a different charge and had or perhaps maybe we should talk about whether he should have been permitted to amend his complaint because that's one of the forms of relief he's seeking here, to say that in his line of business there was a long practice of work, layoff, work, layoff, and so there was no reason for him to think that one more layoff was the end of his relationship. Only in October did that become clear. There could be facts that might support that. Respectfully, here's the difference between his new claim that there is no reason for him to believe that his employment had ended in August and what he says in his charge and what he says in his complaint and what he says in his brief and what he says in his informal papyrus filing, and that is he knew on August 3rd that he engaged in protected activity, so says his complaint, whether it's protected activity under the ADA or some other statute we can talk about perhaps, but he knew that he engaged in protected activity and for that protected activity he was told, get out of here, go home. So to say that there is no reason for him to know that an adverse action ending his employment happened in the beginning of August is something inconsistent with the facts in his complaint and his other documentation, and I would like to point the court to, I think that this makes this case a lot like Lawson and a lot like Caldwell from the circuit. In both of those cases, what the courts, the Fourth Circuit in Lawson and the Caldwell here in the Seventh Circuit, says is when you are terminated from employment, you may think that your employer may remedy that termination at some point in the future and they may rehire you and you may even have a good practical reason not to want to suffer further discrimination in a failure to recall case by not filing an EEOC charge based on the initial act of having your employment terminated, but that doesn't change the accrual date. Your injury is still accrued on the date at which the action took place. So that may be true. Let me ask you this sort of random question. He really finds out about the fact that he's lost his employment permanently when he's trying to get a loan from his 401K. So I take it the employer never told him that his rights vis-à-vis his 401K had changed? That's not in the record, Your Honor. I don't know the answer to that question. But we do know we're not going to work with you because we just found out you were terminated. There's indirect reason to think that something happened with that. Yes. I mean, when an employee is sent home, if they don't think that their employment has been terminated, they have an obligation to do something, to say something, to find out whether an adverse action has occurred if they don't believe one actually had. That's why there is a new or should have known standard. Okay. But you're saying you don't know anything about the 401K. I do not, Your Honor. And there's nothing about it in the record except for what was filed in the briefing below. What communications were made to Mr. Ferris when he was sent home in August? Were they any different? Will the record tell us were they any different than all of those other layoffs and returns? Did he have any reason to believe that he was being discharged at that time? Or was it just one of a whole series of such events? What would be different about this one? Unless Mr. Ferris would allege, and he has not, that every single time he was discharged, it was as a result of retaliation for engaging in protected activity, it was certainly different than his previous layoff situations because what happened in August was, according to Mr. Ferris in his pleadings, was an immediate negative reaction to engaging in protected activity, after which he never worked again for Vector Construction. An employee in that situation at the very latest knows of the discrimination that they allege has occurred. And I think I'd point the court to the Supreme Court's Rick's case. And in particular, actually, I'd like to point the court to the dissent of Justice Stevens. Justice Stevens, as he often did, put forth a practical rule. And the practical rule that Justice Stevens put forth was, we shouldn't mess with any of this accrual issue prior to an employee's last day of employment because it can be ambiguous as to whether or not the employee knew that their termination had occurred. So the last day of employment should be the day that we should just have as a bright line rule that an employment claim accrues. So even in the Supreme Court's most favorable articulation of what the standard for a discriminatory discharge claim could be, it still accrues on the last day that the employee is employed. And plaintiffs do not cite, nor could we find, any case from any jurisdiction that stands for the proposition that an employee who is alleging a discriminatory discharge finds out or discovers any later than the day that that discriminatory discharge actually happens, that the claim accrues. And for all of those reasons, we believe the district court was correct in dismissing this case with prejudice, and any attempt to amend would be futile, and therefore, it should be affirmed. All right. Thank you very much. All right. Ms. Reichman, your time had expired, but I'll give you some extra time if you have something to say in brief rebuttal. Thank you. In Ricks and the other two cases that Vector cites, the plaintiff was told, you'll be terminated at the end of a certain period, and the plaintiff filed only within the time of being terminated, not within the notice. In all three of those cases, the plaintiff received unequivocal notice that they would be terminated. Mr. Ferris did not receive any kind of notice, let alone unequivocal notice, that he would be terminated. He did not find out about it until October, and applying the discovery rule to October, his charge only began to accrue then. Additionally, regarding the 401K loan, Mr. Ferris wrote to the district court judge in his letter reissues on appeal that he had tried to take a loan from his 401K account. So this is in the lower court record, and this court can consider it on appeal. All right. Thank you very much. Thanks to both counsel and the cases taken under advisement.